IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:07-155-JFA |
| ) | |
| v. ) | ORDER |
| ) | |
| HASSAN RICHARDSON ) | |
| _____ ) | |

This matter is before the court on defendant's *pro se* motion and supplemental motion through counsel for a reduction of sentence in light the First Step Act of 2018[1] as it relates to crack cocaine offenses and retroactive application of the Fair Sentencing Act of 2010.[2]

The First Step Act of 2018 was signed into law on December 21, 2018. One of the changes in the Act relates to the Fair Sentencing Act of 2010 which, among other things, reduced statutory penalties for cocaine base ("crack") offenses.[3] Specifically, § 404 of the First Step Act retroactively applies the reduced penalties under the Fair Sentencing Act to "covered offenses" committed *before* August 3, 2010.

The court that imposed a sentence for a covered offense may on its own or on a motion of the defendant, the Director of the Bureau of Prisons, or the attorney for the

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (enacted Dec. 21, 2018).

[2] Pub. L. 111-220; 124 Stat. 2372 (2010).

[3] Effective August 3, 2010, the Fair Sentencing Act reduced the amount of cocaine base needed to trigger certain statutory minimum and maximum sentences. See 21 U.S.C. § 841(b)(1)(A)(iii) (raising from 50 to 280 grams the amount of cocaine base needed to trigger statutory range of 10 years to life in prison); 21 U.S.C. § 841(b)(1)(B)(iii) (raising from 5 to 28 grams the amount of cocaine base needed to trigger statutory range of 5 to 40 years in prison).

1

government, impose a reduced sentence as if the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed. A court may not entertain a motion to reduce a sentence if the sentence was previously imposed or reduced in accordance with the amendments made by the Fair Sentencing Act of 2010 or if a previous motion to reduce the sentence was denied after a complete review of the motion on the merits. Finally, nothing in the Act shall be construed to require a court to reduce any sentence based on the Act's retroactive application of the Fair Sentencing Act of 2010.

On January 18, 2019, the Federal Public Defender's Office filed a supplemental motion on behalf of the defendant. The United States Probation Office has prepared a Sentence Reduction Report ("SRR") and concludes that the defendant qualifies for a reduced guideline sentence, as well as a reduction in his term of supervised release. The government, however, has responded in opposition to the defendant's motions.

BACKGROUND

On October 25, 2007, the defendant pled guilty pursuant to a written plea agreement (ECF No. 723) to Count 1 of the Second Superceding Indictment. That document charged the defendant with being a member of a conspiracy to possess with intent to distribute and distribute "50 grams or more of cocaine base (commonly known as "crack") and 5 kilograms or more of cocaine, both of which are Schedule II controlled substances, and a quantity of marijuana, a Schedule I controlled substance in violation of 21 U.S.C. §§ 844(a)(1), 841(b)(1)(A), and 841(b)(1)(D)." (ECF No. 473 at 1–2).

At the time of the offense, 21 U.S.C. § 841(b)(1)(A) could be violated by a conspiracy to distribute either 5 kilograms of cocaine or 50 grams of crack cocaine. Although the

2

Second Superseding Indictment specified the requisite threshold amount for both substances, at the time, a defendant could be convicted with proof of either substance in the quantity specified. The defendant was sentenced to the statutorily required 240 months, followed by ten years of supervised release. But for this statutorily required sentence, the defendant's guideline range would have been 188 to 235 months.

The government argues that since the defendant pleaded guilty to Count 1—which contained references to the threshold amounts of both powder cocaine and crack cocaine—his sentence should not be disturbed. The court respectfully disagrees.

At the Rule 11 colloquy proceeding to accept the defendant's plea, the defendant agreed to plead guilty to Count 1, but the Plea Agreement does not specify which prong of the § 841(b)(1(A) substances (cocaine or crack cocaine) the defendant was admitting to. It is clear that the parties knew how to make stipulations because there are other stipulations contained in the Plea Agreement.

Also during the Rule 11 hearing, this court described the essential elements the government would have been required to prove in order to convict the defendant on Count 1. In doing so, the court stressed that the two threshold quantities could be considered in the alternative, and made it clear that the defendant could be convicted with proof of either of the required thresholds. The defendant indicated that he understood the essential elements of Count 1 that the government would be required to prove.

Later in the proceeding, when the court asked the defendant to state in his own words what he did to commit the crime, the defendant stated: "I admit to knowing and possession and distribution of 50 grams or more of cocaine with others in connection with the 22 people

3

in this case." (ECF No. 971 at 36). This court followed up with a question: "You admit that you had that much in your possession at one time, 50 grams or more?" The defendant indicated in the affirmative.

Then, when the government's FBI case agent, Rodney Crawford, was asked to summarize the evidence the government had collected in its investigation and would be prepared to go forward and prove at trial, Agent Crawford's recitation related only to crack cocaine. Specifically, Agent Crawford said:

> Yes, sir. As to Mr. Hassan Richardson, the government would call at least seven witnesses that would testify that Mr. Richardson received crack cocaine from the same sources of supply as other individuals in this conspiracy. We would also show three substantive counts, one for January 19, 2007 that were conducted at the direction of the FBI using a cooperating witness, they were audio and/or video recorded, in which Mr. Richardson on January 19, 2007 distributed 7.87 grams of crack cocaine to a cooperating witness, and on January 22, 2007 Mr. Richardson distributed 16.4 grams of crack cocaine, and on January 23, 2007 Mr. Richardson distributed 11.6 grams of crack cocaine.

(*Id.* at 39–40).

As can be seen, Agent Crawford made no mention of 5 kilograms or more of powder cocaine. He only mentioned specific quantities of crack cocaine distributed on three separate occasions.

The Presentence Report ("PSR") prepared in the defendant's case held him responsible for 1.37 kilograms of crack cocaine and 125 grams of powder cocaine.

As noted previously, the Fair Sentencing Act of 2010 removed the statutory mandatory minimum for defendants convicted with regard to the threshold quantity of crack

cocaine, but it did not affect sentences related to powder cocaine.

## DISCUSSION

Here, the record before this court plainly indicates that the defendant did not acknowledge responsibility for more than 50 grams of powder cocaine. The FBI case agent did not attribute 50 grams or more of powder cocaine to the defendant. And this court, in explaining the essential elements of the offense charged, made it clear to the defendant that he could be guilty by conspiring to distribute the required amount of either powder or crack cocaine. Because the record in this case clearly shows that the defendant's sentence was driven by his involvement with crack cocaine and not the requisite 50 grams of powder cocaine, the defendant is entitled to relief under the First Step Act.

With the statutory mandatory minimum removed from this case, the United States Probation Office's Sentence Reduction Report ("SRR") pursuant to the First Step Act of 2018, indicates that the defendant's sentencing range would have been 151 to 188 months.

In an order filed on June 13, 2019 (ECF No. 2125), this court announced its tentative decision in this case and invited the parties to submit any information relating to § 3553(a) factors that this court might wish to address in fashioning a new sentence. The court has received a memorandum from the government and letters of support from a total of 10 of the defendant's relatives. The defendant himself has submitted a *pro se* submission regarding his future plans to establish a lawn care service after his release from prison. After reviewing all of these submissions, the court has determined that a new sentence of 169 months is appropriate in this case. This is near the mid-point for the new sentencing range (151 to 188 months).

As to resentencing, the court has considered the following factors under 18 U.S.C. § 3553(a):

*Nature and Circumstances of the Offense*

Even removing the crack cocaine aspect from the defendant's sentence, it remains clear that the defendant was convicted of a serious crime. Distribution of powder cocaine is a pervasive and serious problem within the District of South Carolina. The defendant willfully joined a drug distribution conspiracy involving the Gangsta Killer Bloods, an organization known for violence and intimidation.

*History and Characteristics of the Defendant*

At the time of the sentencing in this case, the court was aware that the defendant began using marijuana at age 14, and began lacing powder cocaine in his marijuana when he was 17. He has very little employment history and, in fact, the only employment he reported to the Probation Officer was riding with his father twice a month and learning the ropes of becoming a long distance truck driver. Although he pled guilty to the offense initially, he later sought to withdraw his plea and, for this reason, did not receive a reduction for acceptance of responsibility.

Subsequent to the sentencing hearing, the court has received additional information regarding the defendant in response to the court's request. It is obvious from letters received from family members that the defendant has good family support and appears to be genuinely remorseful for his crime. He has plans to establish a lawn maintenance when he is released from prison, which is an occupation requiring long hours and strenuous work. However, he does have two present disciplinary incidents on his BOP record.

6

The first violation is relatively minor: being in an unauthorized area and interfering with the taking count of inmates. The second violation, however, is more serious: On May 27, 2015, the defendant was convicted of possessing a hazardous tool (a cellular phone). While at first this may appear to be an insignificant violation, this court can take judicial notice of the fact that in prisons throughout the United States, possession of cell phones by inmates leads to significant disciplinary problems both inside the prison and outside the prison. Indeed, in South Carolina state prisons, cell phones have been used to help plan and carry out prison riots, engage in consumer fraud, and even coordinate a murder-for-hire from within the prison walls. The court hastens to add that the defendant was not involved in any of these episodes, but it bears mention that cell phones are not innocuous items possessed by prisoners who are incarcerated.

Additionally, the court will take notice of the fact that the defendant has obtained his GED while incarcerated.

*Need for Sentence Imposed to Reflect Purposes
of Sentencing 18 U.S.C. § 3553(a)(2)(A)–(d)*

The court must determine whether a reduced sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing. Those purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

§ 3553(a)(2).

A sentence at the midpoint of the new guideline range would promote the purposes of sentencing outlined above.

*Need to Avoid Unwarranted Sentencing Disparities*

The First Step Act was passed to remedy sentencing disparities affecting defendants sentenced for cocaine base offenses before passage of the Fair Sentencing Act. Defendant's conviction is for a "covered offense" within the meaning of the Act. The court finds that failure to impose a reduced sentence here would result in perpetuation of a sentencing disparity between crack and cocaine offenders.

## CONCLUSION

Considering the foregoing factors, the court has determined that a sentence within the guideline range, but near the midpoint, is appropriate under the circumstances of this case. The custodial portion of the defendant's sentence is reduced to 169 months. Additionally, the defendant's term of supervised release is reduced from 10 years to 8 years. In all other respects, the original sentence remains in full force and effect, including all the conditions of supervised release.

IT IS SO ORDERED.

July 10, 2019  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge